IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSÉ A. MEJÍAS-AGUAYO, et. al.,

    Plaintiffs,

        v.

JUAN DORESTE-RODRÍGUEZ, et al.,

    Defendants.

CIVIL NO.: 14-1059 (MEL)

**OPINION AND ORDER**

### I.  PROCEDURAL HISTORY

On January 23, 2014 José A. Mejías Aguayo ("Mejías Aguayo"), Ramón Luis Mejías Nieves ("Ramón"), and José Antonio Mejías Nieves ("José") (collectively "plaintiffs") filed a complaint against Universal Insurance Company ("Universal") and Juan Doreste Rodríguez ("Doreste Rodríguez"), his wife and the conjugal partnership between them asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). ECF No. 1. On April 25, 2014, plaintiffs filed a notice of voluntary dismissal of all claims against Doreste Rodríguez, his wife, and their conjugal partnership and the court dismissed said claims without prejudice. ECF Nos. 12; 13. On September 8, 2014 Universal filed a motion for partial summary judgment, asserting that the court lacks diversity jurisdiction with respect to Mejías Aguayo. ECF No. 31. Plaintiffs filed a response in opposition on September 26, 2014.[1]  ECF No. 35.

---

[1] Plaintiffs assert that although Universal's motion was filed as a motion for partial summary judgment, it is in essence a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). ECF No. 35, at 3-4. Whether the motion is considered a motion for partial summary judgment or a motion to dismiss for lack of subject matter jurisdiction does not impact the analysis or conclusion contained within this opinion.

## II.    SUMMARY OF UNCONTESTED FACTS[2]

The accident that gives rise to the instant complaint occurred on January 28, 2013 in Isabela, Puerto Rico, upon which date Mejías Aguayo was hit by a car. ECF Nos. 31-1, ¶ 1; 35-1, at 1, ¶ 1. Mejías Aguayo is seventy-four years old and was seventy-two years old on the date of the accident. ECF No. 35-1, at 8, ¶ 1. He has been a widower since September 18, 2001. ECF No. 35-1, at 8, ¶ 5. Prior to the accident he saw his two sons, José and Ramón, approximately twice a year when they came from Florida to Puerto Rico on vacation. Id. at 9, ¶ 6. He did not move to Florida to live with his sons because he "felt fine." ECF Nos. 31-1, ¶ 36; 35-1, at 7, ¶ 36. He was physically active and independent, performing physical labor on his property, cleaning and taking care of himself, picking fruit from trees, driving his own car on errands, and cooking his own meals at home. ECF No. 35-1, ¶ 5.

On the date of the accident, Mejías Aguayo was brought to the hospital in critical condition. ECF No. 35-5, ¶ 8. His son José traveled to Puerto Rico on January 29, 2013, the day after the accident and continued to remain with him for the next three months. Id. ¶ 14. Mejías Aguayo spent two days in the emergency room and on January 31, 2012 was admitted for emergency trauma surgery and critical care. Id. He spent approximately three months in the hospital in Puerto Rico and on March 21, 2013 Mejías Aguayo was then admitted to the Millennium Institute for Advanced Nursing Care in Cupey, Puerto Rico where he received critical care and nursing therapies for approximately twenty days. ECF No. 35-1, at 7, ¶ 34. On

---

[2] Universal did not file a reply to plaintiffs' proposed uncontested facts. Accordingly, facts proposed by plaintiffs that are supported by evidence in the summary judgment record have been deemed admitted and incorporated into the uncontested facts section of this opinion. See Local Rule 56(e) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.").

April 17, 2013 Mejías Aguayo moved to Florida accompanied by his son, José and one of his nephews. ECF Nos. 31-1, ¶¶ 6-8; 35-1, at 2, ¶¶ 6-8, at 10, ¶ 9. He moved to Florida to receive medical treatment. ECF Nos. 31-1, ¶ 34; 35-1, at 7, ¶ 34. During the flight Mejías Aguayo lost consciousness and upon arrival to the Orlando airport emergency medical services was waiting with an ambulance to transport him to the Florida Hospital East in Orlando. ECF No. 35-3, ¶¶ 22-23. After one week, on April 24, 2012 Mejías Aguayo was stabilized and discharged from the Florida Hospital East and transferred to the Courtyards of Orlando Health and Rehab in Melbourne, Florida, where he received critical care and rehabilitation for approximately two months. Id. ¶ 24. On June 29, 2013 he was transferred to the Life Care Center in Florida where he received specialized nursing and rehabilitation treatment for until March 25, 2014 at which time he was discharged and went to live with his son José and his son's wife in Orlando, Florida, where he currently resides. ECF Nos. 31-1, ¶ 6; 35-1, at 2, ¶ 6; 35-5, ¶¶ 25-26, 31.

Due to the "blunt head trauma" he experienced from the accident and the "seclusion" of his subsequent hospital stays he momentarily becomes confused as to the time and the place where he is. ECF No. 35-1, at 8, ¶ 2. As a result of the accident he suffered severe physical injuries to his whole body, resulting in limited movement in his right arm and his left thumb, damage to his shoulder, lower back, and right ear and causing his legs to "freeze up when he sets his foot down." ECF No. 35-1, at 9, ¶ 7. Mejías Aguayo's ability to function and live independently were "substantially diminished" after the accident. ECF No. 35-1, at 9, ¶ 8. He is no longer able to drive a car or cook for himself and does not go out unassisted at any time. Id. Mejías Aguayo can no longer do things on his own and even has difficulty standing up. ECF

Nos. 31-1, ¶ 12; 35-1, at 3, ¶ 12, at 10, ¶¶ 10-11. He has a State of Florida Medicaid card that was issued in or about April 2014. ECF Nos. 31-1, ¶¶ 3, 37; 35-1, at 1, ¶ 3, at 7, ¶ 37.

Prior to moving to Orlando Mejías Aguayo had lived all his life in Isabela, Puerto Rico. ECF Nos. 31-1, ¶ 10; 35-1, at 3, ¶ 10. Mejías Aguayo has a valid driver's license issued in Puerto Rico on January 22, 2010. ECF Nos. 31-1, ¶ 13; 35-1, at 3, ¶ 13. He has a valid voting card issued by the government of Puerto Rico and has not registered to vote in Florida. ECF Nos. 31-1, ¶¶ 14-15; 35-1, at 3,¶ 14, at 4, ¶ 15. Mejías Aguayo was already retired on the date of the accident. ECF No. 35-1, ¶ 3. He does not work and did not file Income Tax Returns for the years 2012 and 2013. ECF Nos. 31-1, ¶¶ 18-19; 35-1, at 4, ¶¶ 18-19. He receives income from the Social Security Administration and a pension from the government of Puerto Rico. ECF Nos. 31-1, ¶¶ 20-21; 35-1, at 4, ¶ 20, at 4, ¶ 21. He receives his Social Security check in his Banco Popular of Puerto Rico account, which is his only bank account. ECF Nos. 31-1, ¶¶ 22-23; 35-1, at 5, ¶¶ 22-23. No arrangements were made to have his Social Security payments directly to him in Orlando since he is able to access the funds in his account using his ATM debit card. ECF No. 35-1, at 5, ¶ 22. Mejías Aguayo has never had a credit card. ECF Nos. 31-1, ¶ 24; 35-1, at 5, ¶ 24. He owns two real estate properties in Isabela, Puerto Rico. ECF Nos. 31-1, ¶ 29; 35-1, at 6, ¶ 29. He has not rented or sold either of these properties since moving to Orlando. ECF Nos. 31-1, ¶¶ 30-31; 35-1, at 6, ¶¶ 30-31. He has not put the properties up for sale because of the depressed real estate market. ECF No. 35-1, ¶ 31. Mejías Aguayo owns two vehicles in Puerto Rico, which are located at one of his properties in Isabela. ECF Nos. 31-1, ¶ 32; 35-1, at 6, ¶ 32. The vehicles he owns currently have no valid license registrations and are not functional. ECF No. 35-1, at 6, ¶ 32. His nephew Junior still lives in Puerto Rico. ECF Nos. 31-1, ¶ 27; 35-1, at 5, ¶ 27.

### III. LEGAL ANALYSIS

The federal courts have jurisdiction over controversies arising between "citizens of different states," provided that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Citizenship is determined by domicile, which can be established by a demonstration that the individual is physically present a state and has an intent to remain there indefinitely. See García Pérez v. Santaella, 364 F.3d 348 (1st Cir. 2004) (citing Sun Printing & Publ'g Ass'n v. Edwards, 194 U.S. 377, 383 (1904); Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979)). "Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence." Id. (citing Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 51 (1st Cir. 1992). The analysis centers on "whether diversity of citizenship existed at the time the suit was filed; subsequent events may bear on the sincerity of a professed intention to remain but are not part of the primary calculus." Id. (citing Hawes, 598 F.2d at 700). Courts generally consider several ties to the parties domicile, including:

> current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes . . . .

García, 364 F.3d at 351 (citing 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3612 (2d ed. 1984)). However, "[n]o single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." Id. (citing Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 12 (1st Cir. 1991); Leon v. Caribbean Hosp. Corp., 848 F.Supp. 317, 318 (D.P.R. 1994)).

Universal asserts that Mejías Aguayo has not established domicile in Florida, pointing out that: (1) he lived his whole life in Isabela, Puerto Rico; (2) he has a valid voting card issued by the government of Puerto Rico; (3) he has a Puerto Rico driver's license; (4) he receives a pension check and Social Security Administration check in his Banco Popular de Puerto Rico account, which is his only bank account; (5) he owns two real estate properties in Isabela, Puerto Rico, which he has not rented or sold since he moved to Florida; (6) he owns two vehicles in Puerto Rico, which are parked at one of his properties in Isabela. ECF No. 31. Plaintiffs respond that Mejías Aguayo moved to Florida as a result of an accident that permanently disabled him, leaving him unable to care for himself. Id. at 17. They contend that regardless of whether it is Mejías Aguayo's desire to remain in Florida, it is his intention to do so as his two sons who reside there are the only immediate family capable of caring for his needs full-time. Id. Plaintiffs assert that his ties to Puerto Rico are "vestiges" of his prior residence in Puerto Rico that do not evince an intention to return in view of his age, retired occupational status, physically disabled condition, and that fact that he requires care from his immediate family living in Florida. Id. at 15-16.

Although Mejías Aguayo has significant ties to Puerto Rico, these remaining connections are consistent with having lived the vast majority of his life there. While in the case of an individual in Puerto Rico who has not yet retired these ties might suggest an intent to return to Puerto Rico once sufficiently rehabilitated from the accident, Mejías Aguayo he has presented evidence as to why these ties do not strongly evince that he intends to return to Puerto Rico. As to his Puerto Rico voter's registration card, plaintiffs respond that Mejías Aguayo is not interested in politics. While this rationale is unconvincing in light of the fact that he appears to

have registered to vote in Puerto Rico at one point and therefore presumably had some interest in politics, this one tie with Puerto Rico is not dispositive in the analysis regarding whether he intends to return and he has presented more compelling rationales as to why his other links with Puerto Rico should not control the question of where he is domiciled. With respect to his Puerto Rico driver's license and vehicles in Puerto Rico, plaintiffs have presented evidence that Mejías Aguayo is physically unable to drive. Since he is unable to drive, the fact that there is no evidence that he has applied for a Florida driver's license is largely moot to the domicile analysis. Additionally, as neither vehicle is functional it is unsurprising that his sons have not made efforts to transport the cars to Florida. Plaintiffs assert that although it is true that Mejías Aguayo's Social Security and pension checks are deposited in his account with Banco Popular in Puerto Rico, he is able to access the deposits via ATMs in Florida, and therefore has not needed to open a new bank account since moving to Florida. With respect to his two real estate properties in Puerto Rico, he has explained that he has not attempted to sell the properties since moving to Florida due to the real estate market, which is indeed plausible, as there is no reason that has been brought to the court's attention by Universal that waiting for the housing market to recuperate before selling real estate properties is an irrational strategy that does not deserve credibility.

As plaintiffs suggest, the most relevant jurisdictional fact regarding his intentions is his ability to care for himself given his age and health condition. Although he had only been living in Florida for approximately nine months at the time this lawsuit commenced, the record suggests that his decision to move was dictated by the decision to obtain medical care in Florida and that he has established a new home there. See García, 364 F.3d (reversing district court's

finding that plaintiff had not established domicile in new jurisdiction where although the plaintiffs had lived there for less than one year the record suggested that the new jurisdiction was the plaintiffs' true, "fixed home and permanent establishment" and their ties to Puerto Rico were "simply the vestiges of longtime prior residence on the island . . . and a nostalgic hope for a far off future."). Mejías Aguayo has presented deposition testimony and statements made under penalty of perjury to sustain the contentions that he is no longer able to live self-sufficiently in Puerto Rico as he had done for over a decade after his wife's death and that he receives continual assistance and attention from his closest relatives—his sons and his son's wife who reside in Florida. As stated under penalty of perjury by his son José, he and Ramón "realized [Mejías Aguayo] could no longer take care of himself as he had before, and he had no immediate family members in Puerto Rico that could be his full-time primary care givers, as both [he and his brother] had been since the time of the accident on January 28, 2013." ECF No. 35-5, ¶ 21. After Mejías Aguayo received medical care at the Florida Hospital East, followed by the Courtyards Rehab, he moved in with his son José and José's wife, Margarita, in Orlando. In anticipation of his father coming to live with him, on December 12, 2013 José "obtained an estimate from a local contractor for the installation of a handicapped bathroom in [his] garage area to accommodate [his] father's daily activities since he was restricted to a wheelchair." Id. ¶ 26. The contractor renovated José's home to provide the handicapped bathroom and a ventilated area with a street view, a television, and "other accessories" that he uses throughout the day within easy reach. Id. ¶ 27. José's wife Margarita stays at home taking care of him and assisting him with his daily activities. Id. ¶ 28.

The record suggests that Mejías Aguayo is unable to care for himself and requires the degree of assistance and accommodation that is being provided to him by his only immediate family, who reside in Florida, and that he would be unable to sustain his former lifestyle in Puerto Rico. Defendants have not brought evidence to the court's attention to refute the degree of his physical limitations subsequent to the accident; they do not contest that he is unable to care for himself, to walk, or to drive. Furthermore, defendants have not brought evidence to the court's attention that Junior or any other relative or other person residing in Puerto Rico has taken care of Mejías Aguayo's daily needs since the date of the accident. Although his nephew Junior continues to reside in Puerto Rico and prior to the accident Mejías Aguayo had "daily contact" with Junior, it is uncontested that Mejías Aguyo was capable of living independently prior to the accidence and no evidence has been brought to the court's attention that Junior is willing or able to provide the care Mejías Aguayo needs in his current state. There is evidence that has Mejías traveled back to Puerto Rico on one occasion since moving to Florida, for the purpose of being examined by Dr. Orlando Fernández.[3] However, no evidence has been brought to the court's attention that he remained in Puerto Rico for a prolonged period of time or that his current needs could be taken care of in Puerto Rico on a permanent basis. ECF No. 31-1, ¶ 16. Overall, the record demonstrates that Mejías Aguayo has no intentions of returning to his former home in Puerto Rico and intends to remain in Florida indefinitely.

### IV.   CONCLUSION

Although defendants have established that Mejías Aguayo has significant contacts with Puerto Rico, a preponderance of the evidence suggests that it is his intention to remain in Florida,

---

[3] The purpose of this examination, such as whether it was related to the claims in the instant litigation, is unclear from the record.

where he currently resides, rather than return to Puerto Rico. With regard to his intentions on this matter, the fact that he spent his life prior to the accident in Puerto Rico, that he had only been living in Florida for approximately nine months at the time the complaint was filed, and that he has a Puerto Rico voter registration card, real estate properties, and vehicles in Puerto Rico are outweighed by a combination of several factors, such as his age, health status, uninterrupted stay in Florida but for a single medical appointment, the availability of his only immediate family in Florida, and the fact that he does not have a job in Puerto Rico or elsewhere, as he is retired. Overall, the uncontested evidence shows that he is unable to care for himself and that he currently lives with the relatives who are willing and able to care for his daily needs, indicating he does not intend to leave Florida and thus is domiciled there. Based on the finding that Florida is Mejías Aguayo's domicile the court has diversity jurisdiction over this case.[4] Therefore, Universal's motion for partial summary judgment (ECF No. 31) is denied.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 15th day of October, 2014.

s/Marcos E. López<br>
U.S. Magistrate Judge

---

[4] Plaintiffs have alleged damages in the amount of $3,800,000.00 in this case. ECF No. 1. No argument has been raised that plaintiffs have not satisfied the amount in controversy requirement for jurisdictional purposes.