IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. MEJÍAS AGUAYO, et al.,<br><br>Plaintiff,<br><br>v.<br><br>JUAN DORESTE RODRÍGUEZ, et al.,<br><br>Defendant. | CIVIL NO.: 14-1059 (MEL) |

**OPINION AND ORDER**

**I.   PROCEDURAL BACKGROUND**

On January 23, 2014, José A. Mejías Aguayo ("Mejías Aguayo"), Ramón Luis Mejías Nieves, and José Antonio Mejías Nieves (collectively "plaintiffs"), filed a complaint against Juan Doreste Rodríguez ("Doreste") and his insurance carrier, Universal Insurance Company ("Universal") (collectively "defendants") pursuant to 28 U.S.C. § 1332(a)(1). ECF No. 1. Plaintiffs alleged that Doreste negligently operated his motor vehicle, which struck Mejías Aguayo, and claimed damages under Article 1802 of the Puerto Rico Civil Code. Id. On September 14, 2015, the jury trial began. ECF No. 100. On September 18, 2015, the jury returned a verdict in favor of defendants finding that plaintiffs did not prove by a preponderance of the evidence that Doreste was negligent in the operation of his automobile on January 28, 2013 and that his negligence proximately caused damage to Mejías Aguyao. ECF No. 107. Judgment was accordingly entered on September 21, 2015. ECF No. 111. On October 9, 2015, plaintiffs moved for a new trial. ECF No. 113. Defendants filed their response in opposition on October 19, 2015. ECF No. 115.

### II.  SUMMARY OF RELEVANT TESTIMONY

As the jury did not reach the question of damages, the summary here will focus on the issue of liability. It was uncontested that on January 28, 2013, Doreste's vehicle struck and injured pedestrian Mejías Aguayo. Doreste testified that he was driving his Lincoln Aviator ("the Aviator") to the post office. At the same time, Mejías Aguayo was crossing the street in such a direction that, if his journey had been completed, he would have crossed first in front of the driver's side of the Aviator, past the front passenger side, and reached the sidewalk in front of a Banco Popular branch ("the bank"). Doreste testified that he saw Mejías Aguayo come from behind an SUV and applied the brakes within a second. When Doreste got out of his vehicle, Mejías Aguayo was on the sidewalk in front of the bank. Doreste testified that he does not drink, he did not run a red light or a stop sign, and he was not texting or speaking on his phone before the impact.

During his deposition, Doreste was presented with a photograph of the street where this collision occurred. Doreste marked the photograph to demonstrate where his car was located, the direction Mejías Aguayo was walking, and the point of impact. Ex. 1.1. Doreste testified that the impact occurred when Mejías Aguayo was closer to the sidewalk in front of the bank than he was to the middle of the road. Further, Doreste testified that he struck Mejías Aguayo with the right side of his vehicle (this corresponds to the front passenger side). On cross examination at trial, Doreste marked a different photograph of the street to show the point of impact. These markings indicate a point of impact closer to the middle of the lane of traffic than the previous image.[1] Ex. A.

---

[1] The exhibit itself contains three lines and two "x" notations, all drawn by Doreste. While making these markings, Doreste testified, "I was going this way and there was a lot of traffic coming this way so . . . almost here there was a big SUV just almost beside me and when I saw Don José coming this way coming when when when when I when he was coming this way when when when I had it in front of my car, I just hit the brakes." Trial, Sept. 15, at

Photographs, taken by an insurance adjuster, showed damage to the front bumper on the passenger side of the Aviator. Doreste testified that this damage was not the result of the impact with Mejías Aguayo. The point of impact on the vehicle, according to Doreste, was further towards the middle of the front bumper than towards the right corner, where the photos show damage.

Mejías Aguayo testified that he was walking towards the bank when the collision occurred. When asked what precautions he took prior to crossing the street, Mejías Aguayo testified, "I looked down and I looked up" but that "there was no cars stopped there." Trial, Sept. 15, at 3:35 PM.[2] By the time of impact, according to Mejías Aguayo, he was lifting his foot up onto the sidewalk in front of the bank. He recalled that there were lines for pedestrians to cross at a traffic light, but he did not use them because they were not located where he was crossing.

Miguel Arroyo Ponce ("Arroyo"), who has known Mejías Aguayo for approximately forty years, did not witness the impact, but saw the immediate after-effects. Arroyo was stopped at a stop sign when he saw a body, approximately two feet in the air at the time, fall onto the sidewalk. When the body fell, Arroyo saw him hit his head and hip. Arroyo then saw a white SUV approximately three feet away. The only other vehicle Arroyo testified to seeing was a car. At some point, Arroyo realized the body was that of Mejías Aguayo. According to Arroyo there are two pedestrian crossings nearby: one is at the corner of the post office and the bank, and one is at a street light.

---

9:20 AM. The most natural read of this testimony in context, coupled with the markings themselves, would be that the rightmost "X" is intended to indicate the point of impact.

[2] As there was no transcript available at the time of this opinion, all citations are to the DCR audio recordings of the trial.

**III.   WEIGHT OF THE EVIDENCE**

After a jury trial, Federal Rule of Civil Procedure 59(a) allows for a new trial "for any of the reasons for which new trials have heretofore been granted in an action at law in federal court." A new trial should not be ordered merely because the trial judge disagrees with the ultimate result or because a different verdict may have been equally supportable. Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009). "[R]ather, the trial judge may set aside a jury's verdict only if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." Conway v. Electro Switch Corp., 825 F.2d 593, 599 (1st Cir. 1987).

The trial court is free to independently weigh the evidence in determining whether a new trial is warranted. Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009). The trial court is not, however, required to do so. Jones ex rel. U.S. v. Massachusetts Gen. Hosp., 780 F.3d 479, 492 (1st Cir. 2015). "[I]t has long been the rule that a trial judge should not act merely as a '13th juror' . . . ." Borras v. Sea-Land Service, Inc., 586 F.2d 881, 887 (1st Cir. 1978). If the determination rests upon findings regarding the credibility of the witnesses, the court must exercise special care not to encroach upon the role of the jury as the ultimate triers of fact. Rios v. Empresas Lineas Maritimas Argentinas, 575 F.2d 986, 990 (1st Cir. 1978).

The verdict here is neither against the clear weight of the evidence nor a miscarriage of justice. Nor is this an appropriate case for the court to re-weigh the evidence. Ultimately, it was uncontested that Doreste's impact with Mejías Aguayo caused damages to the latter. The jury's role is to determine whether, given these facts, Doreste breached a duty of care owed to Mejías Aguayo. Plaintiffs argue that "[t]he undisputed point of impact unequivocally established Mr. Doreste's negligence." ECF No. 113, 8. It is not obvious, and the plaintiffs do not provide a persuasive showing, that the jury finding otherwise was against the clear weight of the evidence.

Doreste testified that he does not drink and was not on a telephone. He also testified that he did not run any traffic lights or stop signs prior to the impact. Plaintiffs did not present any evidence to rebut defendants' testimony on these issues or to make any affirmative showing that Doreste was distracted or exceeding the speed limit. Thus, it was for the jury to determine whether, given the totality of the evidence before them, Doreste was operating his vehicle as a reasonable person of ordinary prudence would have under the same or similar circumstances.

Plaintiffs' argument that relies on the "basic laws of physics" is similarly unavailing. If the plaintiffs intend this argument to be an appeal to common sense understanding, that is the role of the jury. If the plaintiffs intend this, instead, to be an argument based on scientific principles of physics, expert testimony would have been required. Similarly unavailing is plaintiffs' argument that Doreste's testimony regarding the photographs of damage to the Aviator cannot be credible because it is "too much of a coincidence." ECF No. 113, at 8. Doreste testified that the damage shown in the photographs taken by the insurance adjusters was not the product of the incident here, but rather an impact in a parking garage. See Exs. 3.3, 3.5, 3.6. Plaintiffs assert that is it too coincidental both that this damage occurred on the same side of the vehicle as the impact with Mejías Aguayo and that the insurance adjuster took the photograph despite being told it was unrelated. There was no testimony here from the adjuster as to why the photograph was taken.[3] Rather, there is the direct testimony of Doreste that this damage was not a product of the impact with Mejías Aguayo that the jury had to balance against the circumstantial evidence regarding where Mejías Aguayo impacted the car. It is not evident that it was a necessary conclusion that the damage to the vehicle relates to the impact with Mejías Aguayo. Thus, the weight of the evidence on this issue tilts in favor of Doreste. Therefore, the

---

[3] In their closing arguments plaintiffs implied that defendants did not call the insurance adjuster to testify in their case in chief because there was no explanation for taking that picture other than that it was the bumper that hit the Mejías Aguayo. However, the burden of production here is on plaintiffs.

verdict is not against the weight of the evidence. We turn now to plaintiffs arguments regarding specific aspects of the trial.

## IV. CLOSING ARGUMENTS

Plaintiffs argue that multiple statements made during closing arguments require a new trial. As the First Circuit noted "[t]he granting of a mistrial is a last resort, and the trial court's usual remedy for an impropriety will be to give a curative instruction." Hatfield-Bermudez v. Aldanondo-Rivera, 496 F.3d 51, 64 (1st Cir. 2007). "In assessing the effect of allegedly improper conduct by counsel," when a timely objection was made, "the Court must examine the totality of the circumstances, including (1) the nature of the comments; (2) their frequency; (3) their possible relevance to the real issues before the jury; (4) the manner in which the parties and the court treated the comments; (5) the strength of the case; and (6) the verdict itself." Granfield v. CSX Transp., Inc., 597 F.3d 474, 490 (1st Cir. 2010). "Providing the jury with timely and appropriate curative instructions to ignore the offending testimony is a common way to obviate the need for ordering a mistrial." Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 63 (1st Cir. 2005).

If an argument is not objected to in a timely manner, the claims are forfeited and will be reviewed only for plain error. Smith v. Kmart Corp., 177 F.3d 19, 25-26 (1st Cir. 1999). "Under plain error review, we will consider a forfeited objection only if: (1) an error was committed; (2) the error was "plain" (i.e. obvious and clear under current law); (3) the error was prejudicial (i.e. affected substantial rights); and (4) review is needed to prevent a miscarriage of justice." Id. "Plain error is a 'rare species in civil litigation,' encompassing only those errors that reach the 'pinnacle of fault . . . .'" Id. (quoting Cambridge Plating Co., Inc. v. Napco, Inc., 85 F.3d 752, 767 (1st Cir.1996).

A. Preserved Objections

Plaintiffs first contend, without citation to legal authority, that Universal's recitation of a dictionary definition warrants a new trial. Plaintiffs state in their motion that "defense counsel read to the jury the Oxford's Dictionary definition of negligence . . . ." ECF No. 113, at 9. Plaintiffs are correct that defense counsel read a definition during closing arguments. Critically, however, it was not the definition of "negligence," but rather a definition of "accident." Specifically, counsel stated:

> Ladies and gentlemen of the jury, I leave you with Oxford Dictionary's definition of what an accident is, I quote, 'an unfortunate incident that happens unexpectedly and unintentionally, typically resulting in damages or injury.' That is precisely what happened on January 28, 2013 in Isabella, an accident. That is precisely why all the witnesses, all the parties, the attorneys, everyone here has referred to what happened on January 28, 2013 as an accident. That's what it was.

Trial, Sept. 17, at 3:54 PM.

Plaintiffs' objection on this point was initially overruled on procedural grounds. Plaintiffs were represented by three attorneys at this trial. Counsel were informed, on the second day of trial, that the court only accepts objections from the attorney that is conducting that aspect of the trial. For example, if one attorney conducted the direct examination of a witness, that same attorney is responsible for arguing objections raised during that witness's cross examination. If requested, counsel were granted time to confer amongst themselves. Thus, during the first cross examination of Doreste, counsel were directed, "We have only one player with the bat behind the home plate, in this case it is counsel Martínez." Trial, Sept. 15, at 9:20 AM. It was explained that objections were "counsel Martínez's responsibility, because he is the one who is right now conducting direct examination." Trial, Sept. 15, at 9:21 AM.

However, this issue recurred during defendants' closing arguments. Prior to the objection regarding the definition, plaintiffs raised an objection, discussed below, in which the incorrect

7

attorney originally spoke the objection. At sidebar, counsel were again reminded, "[o]ne player behind the bat and in this case." Trial, Sept. 17, at 3:49 PM. It was further explained that "Counsel Román is the one . . . who made the closing. So, I have three plaintiffs lawyers, if you want to channel your objections, channel them through Counsel Román." Id. Thus, when less than ten minutes later plaintiffs raised the objection to the dictionary definition, but did not channel it through Counsel Román, it was initially denied for failure to follow the court's express directives. In denying the objection, the court stated "I already said, I said to you at sidebar, one player behind the plate. In this case it is Counsel Román, if you have an objection, you channel it through Counsel Román." Trial, Sept. 17th, at 3:53 PM. This recurring issue was particularly problematic during closing argument because it took away from opposing counsel's allotted time and unnecessarily interrupted opposing counsel's argument in order to deal with a rule that had repeatedly been explained.

The objection was eventually entertained on the merits once made by the appropriate attorney. Plaintiffs argued that Universal was "instructing the jury on a definition, and that's the court's function." Trial, Sept. 17, at 3:53 PM. The court overruled the objection and stated, "Ladies and gentlemen, I will be instructing you as to the law, but nothing prevents counsel from incorporating . . . from citing the law. Having said that, ultimately, it is my instructions as to the law what matters." Id. This warning was echoed in the fourth jury instruction provided at the close of the case, which stated:

> Remember that any statements, objections, or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are the most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice.
>
> In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

Trial, Sept. 17, at 4:14 PM. Significantly, "accident" is not a legal standard in this case. The only time the word "accident" occurred in the jury instructions was in the stipulations regarding undisputed facts that were drafted by the parties themselves. Those stipulations were not statements of law. Nowhere in the instruction on the law did the jury instructions use the term "accident." Further, the First Circuit has found that the "standard instruction, advising jurors that arguments of counsel are not evidence, [is] adequate to dispel any prejudice from improper remarks." United States v. Ayala-Garcia, 574 F.3d 5, 21 (1st Cir. 2009).

"Trials are adversarial processes in which things may be said which the other side regards as incorrect and sometimes offensive." Mitchell v. Weaver, 806 F.2d 300, 302 (1st Cir. 1986). "[A]lthough the court may and should intervene in instances of unfairness and impropriety," it also must be noted that "[t]he usual way these are dealt with is through rebuttal by the opposing side." Mitchell v. Weaver, 806 F.2d 300, 302 (1st Cir. 1986). Plaintiffs, however, did not address this issue in their rebuttal. Rather, plaintiffs continued to characterize the impact as an "accident," not just once, but three times in his approximately eight minute rebuttal. Thus, any potential error by defendants' single use of a dictionary definition in their thirty-five minute long closing argument was sufficiently cured by the immediate cautionary instruction and the additional instructions before the jury retired.[4]

---

[4] Plaintiffs also object to Universal's argument that the jury should not "fall for" the thinking "that if there's insurance the sky's the limit, there is money to be paid." Trial, Sept. 17, at 3:48 PM. Ultimately, even if there were error here it would be harmless, because the jury did not reach the issue of damages. Plaintiffs objected to this at trial, arguing that if plaintiffs were not allowed to talk about insurance limits or money, defense counsel should not be allowed to either. While discussing damages during their closing argument, plaintiffs inquired of the jury: "How many zeros does that number have to have for you to know that you have compensated? That you have brought them back to even?" Trial, Sept. 17, at 3:05 PM. The objection to Universal's argument was thus overruled, because plaintiffs' counsel had made similarly improper arguments.

Plaintiffs also claim that, in overruling specifically this objection and granting defense counsel five more minutes to his closing due to the multiple objections, the court "evoked sympathy for defendants' [sic] but cast plaintiffs and their counsel in a bad light before the jury at the very close of the case." ECF No. 113, at 9–10. This objection plaintiffs are addressing (unlike a later objection and resulting grant of time), however, was conducted at sidebar, and the jury was made aware neither of the ruling nor of the time granted. Further, the jury was duly

9

B. Forfeited Objection

Plaintiff raises here for the first time an objection to Universal's argument that plaintiffs' witness Arroyo was biased. Plaintiffs point only to a First Circuit case regarding expert witnesses. ECF No. 113, at 7 (quoting Quintana Ruiz v. Hyundai Motor Corp., 303 F.3d 62, 76 (1st Cir. 2002)). Quintana Ruiz held that "a jury verdict cannot be based solely on the jury's rejection of the other side's uncontradicted testimony," particularly in relation to "expert testimony on matters outside of lay competence." Id. This case is initially distinguishable because Arroyo was a fact witness, not an expert. Even on the merits of the objection, Universal's statement does not warrant a new trial.

Here, Universal argued that Arroyo was biased because he knew Mejías Aguayo for forty years, sat with plaintiffs during jury selection, and raised his hand when a question was posed to prospective jurors. The first alleged motive was evidence duly admitted through Arroyo's testimony. In fact, this testimony was elicited by plaintiffs on direct examination of Arroyo. The latter were two isolated comments that did not pervade the closing arguments.

As discussed above, this is not an instance where the jury verdict clearly rested solely on a finding of the credibility of this single witness. Nor can it be said that the jury necessarily discounted the testimony of Arroyo in order to find in favor of defendants. Plaintiffs highlighted Arroyo's testimony that Mejías Aguayo was sent two feet in the air and landed on the sidewalk. According to the plaintiffs' theory of the case, this testimony, coupled with the point of impact Doreste identified in his deposition, show that Mejías Aguayo was nearly finished crossing the

---

instructed at the close of the case that "[i]t is the duty of the Court to admonish an attorney who, out of zeal for the cause of his or her client, does something which is not in keeping with the rules of evidence or procedure." Trial, Sept. 17, at 4:11 PM. The instruction continued by forbidding the jury from drawing an "inference against any attorney to whom an admonition of the Court may have been addressed, or the party he represents, during the trial of this case." Id.

road at the time of impact. Thus, they conclude, had Doreste been operating his car with due care, he would have been able to stop upon seeing Mejías Aguayo in time to avoid the accident. Inferences from evidence such as this are properly left to the jury. After an analysis of the totality of the circumstances, these two comments do not warrant a new trial. Thus any error was not so severe as to constitute a miscarriage of justice.

## V.   JURY INSTRUCTIONS

Plaintiffs point next to multiple jury instructions they contend were in error.[5] An objection must, absent exceptions not present here, be made prior to the instructions being given to the jury, on the record, and "state distinctly the matter objected to and the grounds for objection." Fed. R. Civ. P. 51(c). Failure to give a requested instruction to the jury, when properly preserved, constitutes reversible error "if the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case." Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 8-9 (1st Cir. 2001) (quoting White v. New Hampshire Dep't of Corr., 221 F.3d 254, 263 (1st Cir.2000)). If an objection is not properly preserved, however, the failure to give a requested instruction is reviewed for plain error. Fed. R. Civ. P. 51(d)(2).

### A.  Preserved Objections

Plaintiffs first object to jury instruction eleven, which explained the elements of a negligence claim under Puerto Rico Civil Code Article 1802. According to plaintiffs the reference to "defendant" should reflect that there are multiple defendants. The singular, they argue, gives the impression that Doreste is the only defendant. Plaintiffs attempt to view a single instruction in a vacuum. A complete reading of the instructions belies plaintiffs' argument. The

---

[5] It should be noted at the outset that plaintiffs failed to present, prior to the charging conference, their own proposed final jury instructions on the substantive law at issue. The court nonetheless incorporated many of their suggested changes from this conference into the final jury instructs as read to the jury.

third jury instruction, that the corporate defendant be treated as an equal to private individuals, made reference to Universal. The stipulations agreed to by the parties, contained within the sixth jury instruction, informed the jury that Universal was the insurance carrier for Doreste. Further, the plural defendants was used numerous times throughout the jury instructions. Generally when discussing conduct, the jury instructions use the singular; when discussing liability, the jury instructions use the plural. This is the correct formulation because only Doreste was alleged to have negligently operated a motor vehicle. There was no allegation of actual negligence on the part of Universal, only liability for the negligence of others. Thus, the instruction was not incorrect as a matter of law nor were the instructions, as a whole, misleading.

Plaintiffs also claim that instruction eleven "improperly instructs on the concurrent negligence of two joint tortfeasors when in the instant case the only tortfeasor was Mr. Doreste." ECF No. 113, at 10. "Plaintiff Mejías Aguayo," plaintiffs argue, "may or may not have been comparatively negligent, but under no circumstances could he be a joint tortfeasor along with Mr. Doreste." Id. Plaintiffs do not point to the specific portion of the instruction that they find erroneous. Presumably, plaintiffs are referring to the quoted text of Article 1802 that "[c]oncurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of indemnity." Although this rule governs joint tortfeasors, it applies equally to the contributory negligence of a plaintiff. See Del Moral v. UBS Fin. Servs. Inc. of Puerto Rico, No. CV 08-1833 (PAD), 2016 WL 1275038, at *25 (D.P.R. Apr. 6, 2016) (holding that this provision means that "if a plaintiff's own conduct is one of the adequate causes of her harm, then her award is reduced in proportion to the percentage of the harm she caused herself"). Thus, the inclusion of that provision was appropriate.

Next plaintiffs turn to jury instruction twelve. Plaintiffs object to the decision not to include the entirety of Puerto Rico traffic statutes. The instruction stated:

> The motor vehicle operator owes the pedestrian the duty to regulate the speed of his motor vehicle at all times with due care, taking into account the width, traffic, use and condition of the public highway. Additionally, the operator has a duty to take the proper precautions so as not to injure any pedestrian, with special precautions when the pedestrians are children, or elderly or disabled persons. These precautions shall be taken even when the pedestrian is improperly or illegally using the public road.

Id. at 4:32 PM. This is a summary of the relevant provisions of the applicable sections of Puerto Rico traffic law. It incorporates the first sentence of the "Basic Rule" contained in 9 L.P.R.A. § 5121, which states, "The speed of a vehicle or motor vehicle shall be regulated all times with due care, taking into account the width, traffic, use and condition of the public highway." It omits the remainder of the statute that states,

> No one shall drive at a speed greater than that which allows the driver to exercise proper control of the vehicle and shall reduce its speed or stop when needed to prevent an accident. Pursuant to the requirements stated above, every person shall drive at a safe and adequate speed when approaching and crossing an intersection or railroad crossing, when approaching the summit of a slope, when traveling on a narrow or winding road or when there is special danger to pedestrians or other traffic, or due to the weather or the condition of the public highway.

9 L.P.R.A. § 5121. The remaining two sentences of the instruction contains the Puerto Rico traffic law on the duties drivers owe pedestrians, which serves to elaborate on the generalities established in the basic rule. Plaintiffs' motion does not appear to object to the omission from the instruction of the first two subsections of the law, but rather quotes only the third. ECF No. 113, at 11. This statute states:

> Any person who drives a vehicle on the public roads shall be bound to: . . .
> (c) Take the proper precautions so as not to injure any pedestrian, with special precautions when the pedestrians are children, or elderly or disabled persons. These precautions shall be taken even when the pedestrian is improperly or illegally using the public road. The use of the horn, alone, shall not relieve the driver from liability if other safety measures are not taken.

The first two sentences of subsection (c) are incorporated into the given instruction; only the third sentence was omitted. The relevance of this sentence is not apparent, nor do plaintiffs elaborate. Thus, the applicable law was substantially incorporated into the charge as rendered.

Plaintiffs also object to the inclusion in this instruction of the following sentence, "Additionally, the pedestrian has a duty, when crossing between consecutive intersections, any of which are controlled by traffic lights, to cross on the pedestrian crosswalks marked on the pavement." This is an accurate statement of Puerto Rico traffic law. P.R. Laws Ann. tit. 9, § 5252 (2013) ("Duties of pedestrians when crossing a public highway"). According to plaintiffs, however, the instruction is inapplicable to the facts because the incident at issue did not occur between consecutive intersections. Even assuming there was error here, this instruction relates to whether or not Mejías Aguayo breeched a duty of care. It is relevant only to determining whether Mejías Aguayo was comparatively negligent. Because the jury did not find defendants liable, they never reached the issue of comparative negligence. Thus, any error here would be harmless.

Plaintiffs object to instructions thirteen and fifteen jointly on the grounds that they fail to explain that comparative negligence in Puerto Rico only entails a reduction in damages but does not serve as a bar to recovery entirely. Instruction thirteen explains how the jury is to consider defendants' allegations that Mejías Aguayo was negligent. The jury was instructed that if defendants sufficiently show that Mejías Aguayo was negligent and that negligence was the proximate cause of damages, they "must compare the causes of the plaintiffs' damages and assign percentages based on the responsibility that Juan Doreste Rodríguez and José Mejías Aguayo respectively bear for those damages." Trial, Sept. 17, at 4:34 PM. The jury was further instructed that, "[t]he degree to which defendants are liable for each plaintiff's damages will be then reduced in proportion to those percentages." Id. at 4:35 PM. "In other words," the court

explained, "for defendants to reduce their liability they must show that José Mejías Aguayo's own negligence, that is his failure to act as a reasonable person, contributed to cause his injury and, thus, his sons' damages." Id. Plaintiffs' requested instruction was: "If defendants make this showing you must reduce the plaintiffs' damages and assign percentages based on the responsibility." Trial, Sept. 17, at 12:38 PM. This instruction would have a tendency to confuse the jury. The instruction would seem to tell the jury to reduce the damages themselves and then assign percentages of responsibility. This could lead to a double reduction of the damages or to damages being calculated without any assurance that the jury reduced the recovery correctly based on the percentage assigned. As given, the instruction required the jury to decide the total amount of damages suffered by plaintiffs and the percentage of responsibility born by Mejías Aguayo, from which the court would then reduce the recovery. This was not necessary, however, as the jury found Doreste had no liability.

Instruction fifteen served to explain that conduct and damages are separate and distinct issues. The full instruction was as follows:

> Conduct and damages are separate and distinct issues. To award damages to a plaintiff, you must find that Juan Doreste Rodríguez's conduct caused damages to the plaintiff. If the defendant's conduct is not a direct, proximate, or legal cause of plaintiff's damages, then no damages may be awarded. Damages may be awarded only if you find that defendant was negligent and that his negligence caused some injury to the plaintiff.
>
> Conduct by a defendant that does not cause plaintiff harm does not entitle a plaintiff to damages. By the same token, harm to a plaintiff which is not the result of negligent conduct by defendant does not entitle him to damages.

Trial, Sept. 17, at 4:37 PM. It is not readily apparent how this instruction could confuse the jury into believing that comparative negligence bars all recovery. The plaintiffs failed to elaborate on this point with any specific explanation or to offer an alternative construction.

B.  Objections Not Preserved at Trial

All the remaining arguments were not objected to prior to the jury retiring, but rather, were raised for the first time in the motion for new trial. These objections will therefore be reviewed for plain error. Plaintiffs must thus demonstrate "(1) that there was error, (2) that it was plain, (3) that it likely altered the outcome, and (4) that it was sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial proceeding." Gray v. Genlyte Grp., Inc., 289 F.3d 128, 134 (1st Cir. 2002). As the First Circuit stated, "[t]he plain error standard, high in any event, is near its zenith in the Rule 51 milieu." Toscano v. Chandris, S.A., 934 F.2d 383, 385 (1st Cir. 1991) (internal citations omitted). None of plaintiffs' objections survive this challenge.

With respect to instruction eleven, plaintiffs argue that it erroneously conveys the impression that foreseeability is measured from a subjective standpoint. Plaintiffs do not point to any specific language in the instruction that is at fault. Foreseeability was mentioned at multiple points in instruction eleven. First the jury was instructed that, "Negligence is the failure to exercise due diligence to avoid foreseeable risks.  In other words, if the risk encountered by the plaintiff was not foreseeable to a reasonable, prudent person, then defendant is not negligent for failing to avoid that risk." Trial, Sept. 17, at 4:28 PM. Next it was explained that

> The touchstone of proximate cause is foreseeability.  In order to find that an act or omission was a proximate cause of the plaintiff's damages, you must find not only that the act or omission actually caused those damages, but also that the defendant could have reasonably foreseen that those damages would result from the act or omission. Foreseeability does not apply to all conceivable damages, but only those that according to common experience would ordinarily occur. In other words, you must find that the plaintiff's damages are of the type that, in the normal course of events, would result from the defendant's act or omission.

Id., at 4:29 PM. The instruction then went on to summarize the negligence instruction as follows: "To put it another way, to find that the defendant was negligent, the risk of plaintiff's damage must have been foreseeable, the defendant must have failed to use the care of a reasonably prudent driver, and this failure must have cause damage to the plaintiff." Id., at 4:31 PM. Looked at in context, the jury instructions portray foreseeability as an objective standard measured by the expectations of the reasonably prudent person. There appears no error, certainly not error that is plain and threatens the fairness or integrity or public reputation of the trial.

Plaintiffs also object to the statement of the second element of negligence under Puerto Rico law, which states "a negligent or intentional act or omission, in other words, a breach of the duty of care . . . ." Plaintiffs contend that this is inappropriate in a case with no intentional tort claim. There is no error here, because that is a near verbatim recitation of the legal standard for an Article 1802 claim. See Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007) ("The three essential elements for a general tort claims are: . . . (2) a negligent or intentional act or omission (the breach of duty element) . . . ."). Therefore, none of plaintiffs' arguments regarding the jury instructions warrant a new trial.

## VI.   VERDICT FORM

Finally, plaintiffs request a new trial on the basis of the verdict form. The first question, according to plaintiffs, allows only one proximate cause. The question reads, "Do you find by a preponderance of the evidence that Juan Doreste Rodríguez was negligent in the operation of his automobile on January 28, 2013 **and** that his negligence proximately caused damage to José Mejías Aguayo?" ECF No. 107 (emphasis in original). This does not, by its plain language, limit to only one proximate cause.

Further the jury was instructed that there can be multiple probable causes. The instruction read:

> This does not mean that the law recognizes only one proximate cause of an injury or damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a proximate cause.

Trial, Sept. 17, at 4:30 PM. The jury was also instructed that, "nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find." Trial, Sept. 17, at 4:49 PM.

In light of the foregoing, plaintiffs' motion for a new trial (ECF No. 113) is DENIED.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 21st day of June, 2016.

s/Marcos E. López<br>
U.S. Magistrate Judge